UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES V. MCCLAIN III,

Plaintiff,

v.

THE BOEING COMPANY, et al.,

Defendants.

CASE NO.  C07-567RSM

ORDER ON MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on summary judgment motions filed by defendants Boeing Company ("Boeing"), Gerald Chaput, and the International Association of Machinists District 751 (the "Union"). (Dkt. #26, #32). The plaintiff, Charles McClain, asserts multiple claims against these defendants, all arising from his discharge from employment at Boeing and his subsequent representation by the Union in his dispute with Boeing over that discharge. In moving for summary judgment, the defendants contend that they are entitled to judgment as a matter of law on all claims. Plaintiff has opposed both motions.

The Court has fully considered the motions, plaintiff's opposition, and all supporting declarations and exhibits. For the reasons set forth below, the Court shall grant both motions for summary judgment as to the federal claims, and shall decline to exercise supplemental jurisdiction over plaintiff's state law claims.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 1

# FACTUAL BACKGROUND

Plaintiff began working for Boeing in 1989. The terms of his employment were governed by a collective bargaining agreement ("CBA") between Boeing and the Union. During his tenure at the company, plaintiff had attendance issues that his doctor now explains were caused by depression and acid reflux disease. (Dkt. #37 at 41). Immediately before his discharge, plaintiff had been on an approved leave of absence that ended on October 2, 2006. He returned to work on this date, but left before the end of his scheduled shift. (Dkt. #27 at 27). Plaintiff did not report to work on October 3 and left early on October 4. (Dkt. #37 at 46-47). He was informed at this time by his supervisor, Mr. Chaput, that unless he provided Boeing with medical documentation to corroborate that he was ill, he would receive a Corrective Action Memo regarding his absences when he returned to work. (Dkt. #27 at 30).

Plaintiff did not work after October 4, 2006. (Dkt. #37 at 46-47). He did, however, call the company to report his absences. (Dkt. #27 at 30). On October 11, plaintiff briefly met with Chaput to process some paperwork from an earlier leave of absence that he had taken. At this time, plaintiff told Chaput that he was still not well enough to work, that he was going to see his doctor the next day, and that there was nothing that his supervisor could do to help. (Dkt. #37 at 20).

On October 18, 2006 Boeing decided to terminate plaintiff for attendance violations, and sent him notification of his termination by mail. This was in accordance with Boeing's attendance policy that requires employees to be fired when they have six consecutive days of unexcused absences, even if they call in to report them. On the same day, but after the notification of termination was already mailed, plaintiff submitted medical documentation from his doctor's visit on October 12, 2006, excusing him from work from October 9 through 13 due to "illness."

After plaintiff learned of his termination, he contacted his Union Business Representative, Jackie Boschok, to contest the discharge. Following an investigation into the matter, Ms. Boschok determined that Boeing was not aware when it made its decision to fire plaintiff that he had obtained medical documentation to excuse some of his absences. Plaintiff's untimely doctor's note, if it were considered, meant that he no longer had six consecutive unexcused absences. Further, Boschok learned that although

Boeing's formal policies do not require that employees be contacted in person before they are discharged, this had been a standard practice at the company.

Citing the above reasons, Boschok asked Boeing to reinstate plaintiff with backpay for the time he had missed. (Dkt. #29 at 2-3). After some consideration, Boeing agreed to reinstate plaintiff, but refused to offer backpay. The company reasoned that plaintiff was partially responsible for the situation that had resulted in his termination since he was familiar with Boeing's attendance policy: plaintiff had taken twenty-two other leaves of absence during his tenure with the company and had been suspended or warned on six different occasions for attendance violations. (Dkt. #27 at 11-13, Dkt. #29 at 2). Boschok, however, was able to negotiate that plaintiff would be reinstated in time to receive holiday pay and would be reimbursed for any medical bills that he had incurred during his termination. (Dkt. #32, Pt. 2 at 10).

Boschok took Boeing's offer to the Union Grievance Coordinator, Tom Wroblewski. He informed her that he believed the offer was reasonable and that the Union was unlikely to get a better result through arbitration. (Dkt. #32, Pt. 2 at 11). Therefore, on December 11, 2006, Boschok presented the settlement offer to plaintiff.

By letter, plaintiff rejected this offer because backpay was not included. (Dkt. #32, Pt. 2 at 56). Boschok responded with a letter urging him to reconsider. Plaintiff replied by again rejecting the offer and raising questions about Boeing's actions and his representation by the Union. Boschok approached Boeing one more time to see if they would consider including backpay. (Dkt. #32, Pt. 2 at 12). After Boeing refused, Boschok wrote plaintiff to inform him that the grievance challenging his termination did not have sufficient merit to warrant further action, but he had a right to appeal her decision.

Plaintiff did appeal the decision to the Union President. Mr. Wroblewski, who was now the new President, assigned his assistant to review the matter. After an evaluation, Wroblewski's assistant made the recommendation to uphold the Union's initial decision. (Dkt. #32, Pt. 2 at 28). Wroblewski next independently reviewed plaintiff's file himself. He ultimately came to the same conclusion as Boschok and his assistant, determining that there was insufficient merit to proceed to arbitration. (Dkt. #32, Pt. 2 at 4). In April 2007, Wroblewski sent a letter to plaintiff denying his appeal.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 3

1    Plaintiff then filed this suit alleging that Boeing had breached the CBA and that the Union had

2    breached its duty of fair representation. Further, plaintiff claimed that Boeing and Chaput failed to

3    accommodate his disability by not providing him with time off. Plaintiff also alleged five state law claims

4    against Boeing and the Union: (1) infliction of emotional distress; (2) collusion; (3) retaliation; (4)

5    disparate treatment; and (5) breach of the implied covenant of good faith and fair dealing. The defendants

6    have filed motions for summary judgment to dismiss all claims.

### DISCUSSION

7

8    **I.    Standard for Summary Judgment**

9    Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and

10   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

11   material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

12   In determining whether to grant summary judgment, the court views evidence in the light most favorable

13   to the nonmoving party. *See F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd*

14   *on other grounds*, 512 U.S. 79 (1994). Further, *pro se* documents are liberally construed. *Estelle v.*

15   *Gamble*, 429 U.S. 97, 106 (1976). Unsupported suspicions or allegations, however, are insufficient to

16   defeat a properly supported summary judgment motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

17   242, 249-50 (1986). Furthermore, mere disagreement, or assertions that genuine issue of material fact

18   exist, do not preclude the use of summary judgment. *See Cal. Architectural Bldg. Prods., Inc., v.*

19   *Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987).

20   The party moving for summary judgment has the burden to initially show the absence of a genuine

21   issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving

22   party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an

23   issue of fact regarding an element essential to that party's case, and on which that party will bear the

24   burden of proof at trial. *Id.* at 323-24. To discharge this burden, the nonmoving party cannot rely on its

25   pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324.

26

27

28   ORDER ON MOTION FOR SUMMARY
     JUDGMENT - 4

**II.** **Boeing and Chaput's Motion for Summary Judgment**

    **A.** **Breach of Contract Claim**

Plaintiff's complaint separately alleges that Boeing's unjust termination breached the CBA under Section 301 of the Labor Management Relations Act and that the Union's actions violated its duty of fair representation. (Dkt. #1 at 9-10). These two claims are so "inextricably interdependent" that they constitute a hybrid Section 301/duty of fair representation claim. *See DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164-65 (1983). Employees who wish to survive summary judgment on this hybrid claim must prevail on *both* the underlying claims: they must show that their termination was contrary to the contract *and* demonstrate a breach of duty by the union. *Id.* Further, a court can choose which one of the claims it wishes to address first. *Bliesner v. Commc'n Workers of America*, 464 F.3d 910, 911-12 (9th Cir. 2006) (the "court [is] not required to decide the questions in any particular order").

Plaintiff's hybrid Section 301/duty of fair representation claim can therefore only succeed if the Union did in fact breach its duty of fair representation. *See Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1221 (9th Cir. 2000). Plaintiff concedes that if he cannot establish this, then Boeing and the Union are entitled to summary judgment dismissal on both the underlying claims. *See Stevens v. Moore Bus. Forms, Inc.*, 18 F.3d 1443, 1449 (9th Cir. 1994)("[w]ithout liability imposed on the union, [the employee's] Section 301 action against the employer must fail as well").

    **B.** **Duty of Fair Representation Claim**

Because the parties agree that plaintiff's hybrid claim will only prevail if the Union did breach its duty of fair representation, the Court's focus turns to the Union's handling of plaintiff's grievance. Thus, even if the plaintiff could establish that Boeing's actions during the termination were improper or unjust, that would not be sufficient to resist summary judgment. The relevant inquiry is whether the Union, which successfully negotiated to reinstate plaintiff, adequately represented him.

In order to survive summary judgment on his duty of fair representation claim, plaintiff must show that the Union handled his grievance in a manner that was "arbitrary, discriminatory, or in bad faith."

*Slevira*, 200 F.3d at 1221 (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). When reviewing the Union's actions, the Court must be "highly deferential" since unions need wide latitude to effectively handle their bargaining responsibilities. *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78 (1991); *see also Peterson v. Kennedy*, 771 F.2d 1244, 1254-55 (9th Cir. 1985) ("It is for the union, not the courts, to decide whether and in what manner a particular grievance should be pursued"). Consequently, the Court can only find the Union liable for breaching its duty of fair representation if its actions are "so far outside a wide range of reasonableness that [they are] wholly irrational." *O'Neill*, 499 U.S. at 78. Most importantly, a "union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settles a grievance short of arbitration." *Vaca*, 386 U.S. at 192.

Before considering the Union's conduct in this matter, the Court notes that the National Labor Relations Board ("NLRB") has already determined that plaintiff's duty of fair representation claim lacks merit. The NLRB investigated the same facts and circumstances at issue here and concluded that there was "insufficient evidence to establish that the Union's handling of McClain's grievance was arbitrary, discriminatory, or in bad faith." (Dkt. #32, Pt. 2 at 74). This decision was upheld by the NLRB Office of Appeals. (Dkt. #32, Pt. 2 at 97). Although Ninth Circuit courts have yet to give NLRB rulings consideration in their decisions, other district courts have. *See, e.g.*, *Arnold v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Indus.*, 388 F.Supp. 1105, 1107 (W.D. Pa. 1975), *aff'd*, 529 F.2d 511 (3d Cir. 1975)(NLRB findings are to be "given considerable evidentiary weight"); *Spielmann v. Anchor Motor Freight, Inc.*, 551 F.Supp. 817, 821 (S.D.N.Y 1982)(NLRB decisions are not binding, but can be "seriously considered as evidence in determining the existence of genuine issues of material fact"). This Court finds the NLRB decision significant but not dispositive, and shall analyze the claim independently.

### (1)   Plaintiff fails to establish that the Union acted arbitrarily.

The first prong of a duty of fair representation claim considers whether the Union acted

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 6

arbitrarily. The Ninth Circuit, when looking at this question, initially asks whether the conduct

challenged by an employee was an act involving the union's judgment or whether it was procedural or

ministerial. *Wellman v. Writers Guild of America, West, Inc.*, 146 F.3d 666, 670 (9th Cir. 1998). A

union's judgment includes its decisions about how to pursue certain grievances. *See Stevens*, 18 F.3d at

1447-48. Further, if it is the union's judgment at issue, then as a matter of law it cannot be challenged

under the "arbitrary" test. *See, e.g.*, *Wellman*, 146 F.3d at 670. The Ninth Circuit has in fact "never held

that a union has acted in an arbitrary manner where the challenged conduct involved the union's

judgement as to how best to handle a grievance." *Patterson v. Int'l Bhd. Of Teamsters, Local 959*, 121

F.3d 1345, 1349 (9th Cir. 1997)(quoting *Peterson*, 771 F.2d at 1254).

Here, plaintiff challenges the Union's judgment in handling his grievance. He argues that the

Union should have proceeded to arbitration when Boeing refused to offer backpay along with

reinstatement. However, the decision on how far to pursue a grievance is strictly within the Union's

judgment, and the Court must defer to that judgment. There were three different Union representatives

who carefully considered the circumstances of this case, including the fact that plaintiff did have six

consecutive unexcused absences when Boeing initially decided to fire him. These representatives believed

that a grievance contesting the termination was unlikely to result in a better outcome than the

reinstatement offer, which had been rejected by plaintiff on two occasions. This reinstatement offer was

negotiated by the Union and would have given plaintiff his job back in time for holiday pay, as well as

reimbursement for any medical expenses he had incurred since his discharge. This collective *judgment* by

the Union that it could not do better through arbitration cannot be challenged by plaintiff under the

"arbitrary" prong.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 7

Plaintiff, however, argues in his opposition to the summary judgment motions that the Union's failure to file a timely grievance is the real reason that arbitration was not pursued. (Dkt. #36 at 7). He contends that the Union was mandated by the CBA to file a written grievance within seven days of plaintiff's discharge, something that it admits it did not do. Without this written grievance, plaintiff claims, the Union could not legally pursue arbitration. According to plaintiff, this is the real reason his grievance was dismissed. The implication of this allegation, although not stated directly by plaintiff, is that the Union's conduct was not purely a judgment, but included a procedural error that could be challenged under the "arbitrary" prong.

The Court rejects plaintiff's argument for several reasons. First, the Union's failure to file a written grievance was not an issue during this representation process. Boeing and the Union have submitted sworn declarations stating that written grievances, even though required by the CBA, were not in practice used between the two parties. Instead, both sides had mutually agreed that it would be sufficient under the CBA for the Union to verbally inform Boeing, within seven days of a termination, if there was going to be an investigation into the discharge. (Dkt. #39, Pt. 2 at 7-8). The Union complied with this informal requirement and alerted Boeing six days after plaintiff was fired that it was looking into the matter. (Dkt. #39, Pt. 2 at 8). The company cooperated with the investigation, and after negotiations agreed to give plaintiff his job back. Boeing never questioned the lack of a formal written grievance, and the company's history supports the conclusion that it would not do so if the Union had chosen to pursue arbitration. (Dkt. #39, Pt. 2 at 7-8).   There is thus no basis for finding the procedural error that plaintiff alleges.

Moreover, plaintiff has not presented any evidence that suggests the Union's decision against

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 8

arbitration was based on timeliness of the grievance rather than on a substantive review of the merits. All three Union representatives who represented plaintiff have submitted declarations explaining their decision was made solely because the Union felt it could not get better results through arbitration than the settlement agreement. (Dkt. #32, Pt. 2 at 4). Based on the evidence presented, there is no reason to believe that the lack of a written grievance played any role in the Union's judgment.

Even if the Court were to believe that the Union's failure to file a written grievance was an issue, the Union's conduct would still not be so unreasonable that it is "wholly irrational" or arbitrary. *See O'Neill*, 499 U.S. at 78. The record demonstrates that the lack of a written grievance did not affect the Union's representation. The Union was still able to negotiate favorable terms for plaintiff that included, most importantly, his reinstatement. The Union made a sincere effort to obtain backpay for plaintiff, but Boeing refused. After plaintiff rejected the settlement offer, the Union's decision to dismiss his grievance and not seek arbitration was a rational one. *See Vaca*, 386 U.S. at 192. Because plaintiff presents no other evidence that could possibly lead to a conclusion that the Union's conduct was outside a "wide range of reasonableness," the Court cannot find its actions arbitrary.

(2)    Plaintiff fails to establish that the Union's conduct was discriminatory.

Plaintiff also fails to show that his representation by the Union was discriminatory. This prong of the duty of fair representation claim prohibits "invidious" discrimination. *O'Neill*, 499 U.S. at 81. The definition of discrimination implies that in order for the Union to have discriminated against plaintiff it must have denied him privileges based on a group, class, or category to which he belonged. *See Olmstead v. L.C. by Zimring*, 527 U.S. 581, 616 (1999) (Thomas, J., dissenting) (citing *Random House Dictionary* 564 (2d. Ed. 1987)); *see also Black's Law Dictionary* 500 (8th Ed. 2004) (Discrimination is an

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 9

"established practice that confers privileges on a certain class or that denies privileges to a certain class because of race, age, sex, nationality, religion, or handicap"). Further, to establish discriminatory conduct, plaintiff must provide "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *See Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 301 (1971).

Plaintiff's allegations against the Union fail to state any actionable claim of discriminatory conduct. Plaintiff first asserts that the Union's actions are a form of retaliation for his prior lawsuits, but he provides no support for this assertion other than his conclusory allegation. Moreover, it fails, like his other allegations of discrimination, to state a claim of "invidious" discrimination under the fair representation standard. As plaintiff admits in his deposition, he does not allege that the discrimination is based on his membership in any protected class. (Dkt. #27 at 21).

Plaintiff then asserts that other Union members were treated more favorably than he was. He offers the example of another discharged Boeing employee whose grievance was taken to arbitration by the Union. (Dkt. #38 at 9). Plaintiff's position appears to be that the mere fact that the Union takes some grievances to arbitration and not others constitutes discrimination. There is no legal basis for this conclusion. The Union can choose how to best handle a grievance, and a decision to not pursue arbitration does not violate the duty of fair representation.

Plaintiff also alleges discrimination because another employee was not discharged by Boeing even though she had more hours of unexcused absences. (Dkt. #38 at 9). This claim can be disregarded without addressing its specific merits. This is because it is the *Union's* conduct, and not Boeing's, that must be addressed. Plaintiff, therefore, has failed to present any evidence that proves that the Union's

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 10

conduct was discriminatory.

        (3)    <u>Plaintiff fails to establish that the Union acted in bad faith.</u>

Finally, plaintiff argues that the Union's conduct constituted bad faith. For bad faith to be present, there must be a showing of fraud, deceitful action, or dishonest conduct. *Marquez v. Screen Actors Guild, Inc.*, 124 F.3d 1034, 1039 (9th Cir. 1997), *aff'd*, 525 U.S. 33 (1998). Moreover, a "disagreement between a union and the employee over a grievance, standing alone, [does] not constitute evidence of bad faith, even when the employee's grievance is meritorious." *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 637 (9th Cir 1988).

Plaintiff fails to demonstrate that the Union's conduct was fraudulent, deceitful, or dishonest in any manner. This is true for all the different allegations contained within plaintiff's pleadings. First, plaintiff does not present any evidence to support his speculation that the Union acted in bad faith as retaliation against him for his previous lawsuits. Rather, the record demonstrates that all the Union representatives involved in his representation did not consider his prior legal actions in their decision. (Dkt. #32, Pt. 2 at 4). Second, there is no legal basis for plaintiff's assertion that the settlement agreement was unlawful. The agreement's terms were not unconscionable and the confidentiality provision was in fact legal. *See Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 765 (Wash. 2004). Finally, as previously explained, there was no bad faith involved when the Union followed its standard practice of not filing a written grievance when initially contesting plaintiff's discharge.

Based on the above factors, the Court concludes that the Union's conduct in this matter was not arbitrary, discriminatory, or in bad faith. Plaintiff's hybrid Section 301/duty of fair representation claim necessarily depends upon a finding of such wrongful conduct by the Union. In the absence of such

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 11

conduct, the Court concludes that Boeing is entitled to summary judgment dismissal, with prejudice, on plaintiff's hybrid Section 301/duty of fair representation claim.

### C.   Failure to Reasonably Accommodate a Disability Claim

Plaintiff's remaining federal claim against Boeing and Chaput accuses them of failing to reasonably accommodate his disability in violation of the ADA. Plaintiff makes this allegation because he believes that Boeing and Chaput were aware of his disability and his subsequent need for time off. (Dkt. #1 at 11). To establish this ADA claim, plaintiff has the burden of showing that (1) he was disabled; (2) he was a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).

Plaintiff has presented no evidence to show that he is disabled within the meaning of the ADA. Even if he could establish that he is disabled, his prima facie ADA case would still fail because he does not present any evidence to support the third prong of the claim: that he suffered an adverse employment action *because of his disability*. There is no question that there was an adverse employment action, since plaintiff was terminated. However, plaintiff fails to establish that he was terminated because of his alleged disability. Rather, the record demonstrates that plaintiff was fired solely because of his violation of attendance policy, specifically the policy regarding unexcused absences violations. The memo informing plaintiff about his discharge specifically states that he is being terminated due to "12 extended unexcused absences..." (Dkt. #32, Pt.2 at 55). Further, after Boeing was informed by the Union that some of plaintiff's absences were excused, he was offered his job back because he was no longer in violation of the company's attendance policy. These facts show that plaintiff's alleged disability, if Boeing even knew

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 12

about it, was never an issue to the company, and plaintiff has not proven otherwise.          Since plaintiff

has failed to present a *prima facie* case under the ADA, Boeing and Chaput are entitled to summary

judgment on this claim.

###    D.    State Law Claims

Once plaintiff's hybrid Section 301/duty of fair representation claim and ADA claim have been

dismissed, the Court no longer has original jurisdiction of any federal claims or questions under 28 U.S.C.

§ 1331. Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental

jurisdiction over plaintiff's remaining state law claims against Boeing and Chaput. Accordingly, these

claims shall be dismissed without prejudice.

### III.    Union's Motion for Summary Judgment

###    A.    Duty of Fair Representation Claim

The above discussion addressing Boeing's motion on the hybrid Section 301/duty of fair

representation claim is dispositive of plaintiff's claim that the Union breached its duty of fair

representation. To reiterate, it is for the unions, and not the courts, to determine the best way to handle

grievances. *See Peterson*, 771 F.2d at 1254-55. Because the Union's representation of the employee in

this situation cannot be said to be so unreasonable that it was "wholly irrational," defendant Union is

entitled to summary judgment on the duty of fair representation claim. *See O'Neill*, 499 U.S. at 78.

###    B.    State Law Claims

The Court also declines to exercise supplemental jurisdiction over plaintiff's remaining state law

claims against the Union, pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

 ORDER ON MOTION FOR SUMMARY
JUDGMENT - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court is required to defer to the Union's judgment in this matter unless there is evidence that it acted in a manner that was arbitrary, discriminatory, or in bad faith. Plaintiff fails to establish this and consequently his hybrid Section 301/duty of representation claim cannot withstand summary judgment. Plaintiff also fails to show that Boeing and Chaput violated the ADA by failing to accommodate his disability. Therefore, the Court GRANTS both of the summary judgment motions filed by the defendants regarding these federal claims, and these claims are DISMISSED.

Further, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. These claims are consequently DISMISSED without prejudice.

Plaintiff's untimely motion to supplement the record (Dkt. # 76) is not ripe for consideration and is STRICKEN as moot.

Dated this 28th day of February, 2008.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 14